### WILLIFORD v. ÆTNA LIFE INS. CO.

1. NEW TRIAL—INSURANCE—JURIES.—Trial Judge correctly held here that the pleadings and evidence raised the issue, "was W. so intemperate as to impair his health," on date the insurance company attempted to cancel the policy, and the jury having passed on this question fairly, he was not in error in refusing to disturb the verdict, as several witnesses testified on this point.

2. INSURANCE—CANCELLATION OF POLICY.—Under the terms of the policy here, the Judge correctly charged that the company could only cancel the policy if at time of cancellation the health of the insured had been impaired by intemperance.

Before GARY, J., Fairfield, September term, 1901. Affirmed.

Action by Addie J. Williford against Aetna Life Insurance Co. From judgment on verdict for plaintiff, defendant appeals.

*Messrs. Moore & Thompson* and *Jas. W. Hanahan,* for appellant. The former cite: *Instructions should state the law correctly and harmoniously:* 11 Ency. P. & P., 145, 148. *Courts commend clause against intemperance:* 2 Ency., 45, 47; *as to its construction:* 123 Ind., 384; 123 U. S., 739.

*Verdict against weight of evidence should be set aside:* 14 Ency. P. & P., 776; 19 S. C., 580. *Also where there is no evidence to support it:* 58 S. C., 222; 52 S. C., 382.

*Messrs. Ragsdale & Ragsdale* and *J. E. McDonald,* contra. *Mr. G. W. Ragsdale* cites: *Agreement as to intemperance cannot be enforced after receipt of two annual premiums:* Rev. Stat., 1483; Bacon on Ben. Soc. & Life Ins., 1 ed., secs. 201, 208, 1014. *No offer to return premiums or pay reserve to insured:* 63 S. C., 290.

June 25, 1902. The opinion of the Court was delivered by

MR. JUSTICE POPE. In 1894, the husband of plaintiff procured the defendant to issue him a policy of insurance on his life for the benefit of the plaintiff. The annual premium was $57.68, and on the 29th day of September, 1894, the first annual premium was paid, and for each successive year until the 29th day of September, 1899, this annual premium was paid to and received by defendant; but on the 30th day of September, 1899, the defendant returned the annual premium of $57.68 to the husband of plaintiff, alleging that the defendant insurance company, in the exercise of its right under the policy issued to the husband, Quay D. Williford, would and did cancel said policy, because he had become intemperate in the use of intoxicating liquors to such an extent as to impair the health of said Quay D. Williford. The said Quay D. Williford denied the defendant's right to cancel said policy for such alleged cause. The said Quay D. Williford died on the 4th day of October, 1900. The plaintiff as the beneficiary of said policy made proof of the husband's death and demanded payment of the policy. This was denied. So in January, 1901, the plaintiff brought her action on the policy in question. The answer of the defendant set up four defenses. *First.* The defendant denied all the allegations of the complaint except that the plaintiff was the wife of Quay D. Williford, and as such had an insurable

interest in his life.   *Second.*  That the policy issued to Quay
D. Williford contained a condition whereby it might for cer-
tain causes be cancelled in his lifetime, that if the insured
"shall become so far intemperate as to impair his health or to
induce *delirium tremens,*" then the policy shall become void;
and that after defendant had issued the policy during the
lifetime of said Quay D. Williford, he became very intem-
perate in the use of intoxiacting liquors, to such an extent as
to impair the health of the insured, and that as soon as the
fact became known to the defendant, to wit: some time in the
year 1899, the defendant exercised the right it had reserved
to itself in said policy of cancelling said policy during the
lifetime of the said Quay D. Williford, and did cancel the
same and refuse to accept any further annual payments on
the same.    *Third.*  That the defendant has offered to pay
to the plaintiff the sum of $164.24 as the amount due from
the legal reserve fund according to the actuaries' table of
mortality, with the four per cent. interest added thereto,
which sum was not forfeited by the cancellation of said
policy, but the plaintiff has refused to accept the same.    For
a *fourth defense.*  That the defendant was not allowed the
ninety days after satisfactory proof of death, as required by
the policy, before this action was brought; and inasmuch as
this ninety days were not allowed after proof of death before
suit was brought on the policy, the plaintiff is not entitled to
any interest on the money due her on said policy.    The cause
came on for trial before his Honor, Judge Ernest Gary, and
a jury.    The result of the trial was a verdict for the plaintiff
for $2,000.    A motion for a new trial was refused.

After entry of judgment, the defendant appealed there-
from on four grounds, as follows—which we will dispose of
in their order—that is to say, the third and fourth grounds
as to a refusal for a new trial:

"3. Because his Honor erred, as a matter of law, in refus-
ing defendant's motion for a new trial upon the ground that
the question of fact, whether the insured at the time
the policy was cancelled was so intemperate as to

impair his health having been squarely put to the jury, 'the verdict of the jury should settle the question.'

"4. Because inasmuch as the uncontradicted testimony of the insured's physician showed that at the time of the cancellation of the policy, the health of the insured had been impaired by his intemperance, and inasmuch as the verdict of the jury was absolutely without evidence to support it, his Honor erred as a matter of law in refusing to grant defendant's motion for a new trial."

The Circuit Judge, in his order refusing a new trial, said : "The jury in the case rendered a verdict for the plaintiff for the full amount of the premium on the life policy upon which plaintiff's action was based. Subsequent to the rendition of said verdict, the defendant's counsel made motion for a new trial before me upon the minutes of the Court. The motion was fully argued, and after considering the same, I am of opinion that the motion is to be decided upon the single question of fact whether at the time the policy of insurance sued upon was cancelled, the insured was so intemperate as to injure his health. This question was squarely put to the jury, and I am of the opinion the verdict of the jury should settle the question * * *" (a) The policy issued contained these clauses: "Sec. 6. The answers, representations and declarations contained in or indorsed upon the application for this insurance (which application indorsed hereon is hereby referred to and made a part of this contract) are warranted to be true, and if this policy has been obtained by fraud, mispresentation or concealment ; or if the insured shall commit suicide ; or *if he shall become so far intemperate as to impair his health or induce delirium tremens;* or if he shall at any time travel or reside outside of the United States, Canada or Europe, including the waters connecting those countries ; or if during any part of the months of July, August, September or October, he shall travel or reside in the United States, south of the 32d degree of north latitude ; or if he shall be personally engaged in blasting, mining, aeronautic or submarine operations ; or in the manufacture of

explosive substances; or employed on or about any moving railway cars or engine, or in any ship or boat; or if he shall engage in army or naval service in time of war; then in each and every of the foregoing cases, this policy shall become and be null and void, except as provided in sections 7 and 8. Sec. 7. After the death of the insured, if it occurs three years or more from the date hereof, three full years premiums having been paid, and the age correctly stated, this policy shall be indisputible for the conditions named in sec. 6, except as to army or naval service in time of war, but said company reserves the right to enforce its provisions as to fraud, misrepresentation or *intemperance* during the lifetime of the insured" (italics ours). The words used in the sixth clause are: "or if he shall become so far intemperate as to impair his health or induce *delirium tremens.*" "This policy shall become and be null and void." By the terms of the policy itself, no officer except certain officers there enumerated had the right to alter the terms of the policy, viz: "The president, vice-president, secretary and assistant secretary." So we find in the "Case" a letter from J. L. English, secretary, as follows: "Hartford, Connecticut, Sept. 19, 1899. Mr. R. J. Blalock, Manager—Dear Sir: We have received several reports upon Quay D. Williford, policy No. 228,750, which satisfy us that he is drinking to excess and violating the conditions of his policy thereby, and that he misrepresented his habits as to the use of stimulants in his application. This is to instruct you not to make any effort whatever for the collection of another premium under this policy; but should the premium be tendered to you on or before the day it falls due, return it immediately to the payer, stating to him that the company is unwilling to continue insurance under the policy for the reason above given. Do not fail to heed this instruction, and notify your agent if necessary. Yours truly, J. L. English, secretary." The testimony showed that for the first time, to wit: on the 30th September, 1899, Mr. Blalock, as manager, acted under the instructions of J. L. English, as secretary of the defendant company; on which date he

alleged that he cancelled the policy.    So, also, in the defend-
ant's answer it alleged: "3. That after the defendant had
issued the said policy insuring the life of the said Quay D.
Williford, he became very intemperate in the use of intoxi-
cating liquors, to such an extent as to impair the health of
the insured, and as soon as this fact became known to the
defendant, to wit: some time during the year 1899, the
defendant exercised the right it had reserved to itself in and
by said policy, of cancelling said policy during the lifetime
of the insured, and notified the said Quay D. Williford that
the said policy had been cancelled under the right reserved
by the company to cancel said policy and refused to accept
any further annual premiums on the same." The testimony
offered at the trial showed that the defendant on no other
occasion than on the 30th September, 1899, attempted or
sought to cancel this policy on the life of Quay D. Williford.
Such being the case, the Circuit Judge made no mistake in
holding that the pleadings and testimony raised the issue:
"Was Quay D. Williford so intemperate as to impair his
health on the 29th day of September, 1899?" The jury by
their verdict said he was not so intemperate at that time as to
injure his health. The Circuit Judge refused to disturb
their finding.

(b) The testimony of Dr. Buchanan was not the only tes-
timony before the jury as to the effect of the use of alcoholic
liquors upon the said Quay D. Williford at the date of the
cancellation of the policy, on the 30th September, 1899.
Mr. Elliott and two gentlemen in the business employ of
Mr. Williford also testified as to such effects of the liquor
habit upon him. Dr. Buchanan was very frank, and by his
testimony showed himself to be well up in his profession
both by reading and thought. Still, with the testimony, all
the testimony before the jury, it was their sworn duty to find
the facts. Having done so, the Circuit Judge declined to
interfere with their finding. He committed no error of law
therein. We cannot, therefore, interfere. Exceptions 3
and 4 are, therefore, disallowed.

We will. next examine exceptions 1 and 2, which are as follows:

"1. Because his Honor, the presiding Judge, erred in charging the jury that the defendant company must show 'that at the time the policy was cancelled, Mr. Williford was *intemperate at that time* to such an extent as to impair his health,' thereby in substance instructing the jury to exclude from their consideration any impairment in the health of the insured that may have resulted from his intemperance prior to the time the policy was cancelled.

"2. Because his Honor erred in charging the jury that the question before them for decision was whether or not the health of the insured was *so* impaired as to 'justify and warrant the company in cancelling the policy;' whereas he should have charged the jury that any existing impairment of the insured's health from intemperance would under the contract have warranted a cancellation of the policy." In studying the "Case," we have been struck with the remarkable field the defendant was allowed to travel or occupy with its testimony. Dr. Buchanan was the family physician of the said Quay D. Williford, and he appealed to the Court to protect him from an examination of Mr. Williford's physical condition, his habits, &c.; but the presiding Judge required him to testify fully. Then, too, the plaintiff sought to restrict the testimony up to the 30th September, 1899; but again the presiding Judge opened wide the door, so that the whole of Quay D. Williford's habits as to drink up to his death were spread before the jury. But when the Circuit Judge came to charge the jury, he did use the language imputed to him; but let us see what he did say: "Now, the contention of the company is that the deceased became intemperate to such an extent that it endangered his health or impaired his health, and that the company, under that clause which I have just read to you, claimed that it had the right to cancel the policy to the extent of any further insurance; but it simply admits it is liable under sec. 8. That is, if three or more premiums have been paid, they pay over what is known as the legal

reserve, with interest.    That is the liability that the company admits it is due the plaintiff.    Now, gentlemen, I am going to submit this case to you upon this question of fact.    I charge you that it is a part of the contract entered into by the parties, that if the insured, Mr. Williford, became intemperate to such an extent as to impair his health at the time the policy was cancelled, that the company would have a right under that clause to have cancelled the policy.    But to make it binding, it must appear by affirmative testimony in this case, that, at the time the policy was cancelled, Mr. Williford was intemperate, at that time, to such an extent as to impair his health.    Now, as I understand, that does not mean a drink, an occasional drink, but he must have indulged in the use of alcoholic stimulants to such an extent as to impair his health or to give him *delirium tremens,* and that impairment must have been at the time that this policy was cancelled, because that is the authority under which the company claims to have cancelled it, and that is the only authority by which it could have cancelled it.    His being drunk at a subsequent time, or his health being impaired subsequently, would not authorize the cancellation of the policy unless his health was impaired by the use of stimulants at the time of the cancellation of the policy.    Now that brings up the case for you to try.    At the time this check was tendered to the company, was the health of the insured so impaired, at that time, by intemperance as to justify and warrant the company in cancelling the policy under that clause?    If his health was impaired at that time by intemperance, I charge you the company would have the right to cancel the policy.    But if at the time the check was tendered he was not intemperate to the extent of impairing his health, the company would not have the right to cancel the policy; and under its own terms after five payments, the insured could go on in that event for nine years and fifty-nine days.    What was the state of health of the insured at the time the check was tendered to Mr. Blalock?    Was his health so impaired by the use of alcoholic spirits; had he indulged in alcohol to such an extent as to

impair his health? If so, the company would have the right to cancel the policy to the extent of that reserve fund. If it was not impaired by the use of such stimulants, then the company would not have the right to rescind the contract, and it would be binding in that event upon the company." We always prefer to quote a Judge's charge in full on a point, to show by his own words what he led the jury to accept. In this instance, we see that the Circuit Judge made no mistake as to the law he laid down. If there was any error made, it was in making his charge too favorable to the defendant. It might be doubted, under the language of this policy, if the insurance company had any right of their own will to cancel this policy. It had to be done for a certain cause. It had to be done in the lifetime of the insured. But where? In court or out of court? Can a company for five years receive premiums on the life of one of their customers, and then upon idle reports, it may be, of the intemperate habits of one of their customers whose money they still keep in their own treasury, without any hearing, cancel his policy? The case of *Thompson* v. *Insurance Company,* 63 S. C., 297-300, contains some valuable suggestions along this line; but we are not called upon in this case to question the liberality of the Circuit Judge to the defendant. The first exception is overruled.

2. Nor do we think the Circuit Judge was in error as set out in the second exception. We have reproduced the charge. The language is fair to the defendant. If anything, too fair to the defendant. Let this exception also be overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE JONES *concurs in the result.*